From Charles K. Derr, Reading, Pa.

## In re Kenhorst Borough. No. 2

*Darlington Hoopes,* for petitioners.
*John W. Speicher* and *C. W. Matten,* for remonstrants.

SHANAMAN, J., July 27, 1931.—The residents of a certain portion of Cumru Township petitioned, to No. 7171 Misc. Dock., 1930, to be incorporated as a borough. Remonstrances were filed, and after hearing and argument we handed down an opinion in which we held that the petitioners were entitled to incorporation, but that the amount of land included was excessive, and we, for that reason, denied the charter. In the same opinion we granted leave to present a new petition, covering the same territory diminished by an approximate exclusion of lands deemed by us excessive [In re Kenhorst Borough, No. 1, 16 D. & C. 742].

A petition was thereupon filed, in accordance with our permission granted, to No. 7715 Misc. Dock., 1931, advertisement made, hearing had and argument heard. The landowners who objected to the first petition have not objected to the second, but the Supervisors of Cumru Township, who objected to the first, are remonstrating also against the second. They have, however, abandoned the second and third of their exceptions filed in the present case.

Their third and fourth exceptions, going to the merits of the application, are identical with some of their exceptions which we fully discussed and adjudicated against them in our opinion filed April 14, 1931, In re Kenhorst Borough No. 1, 16 D. & C. 742. We do not think it necessary to repeat the review and consideration of the facts, which was fully contained in our said opinion. In it we said, and do now repeat: "It is objected, therefore, first of all, that the incorporation would obviously deprive the township of one-third of its road taxes, while relieving it of the care of only one thirty-fifth of its roads, and would thereby impose considerable hardship on the remainder of the township outside the proposed borough. This fact, naturally of great concern to the remainder of the township, is not, however, of itself a reason to refuse the application if the applicants ought to be incorporated. The major portion of the proposed borough is, quite manifestly to one viewing it, a built-up and continuous collocation of homes abutting, to a very considerable extent, on wretched streets. Into the history of this condition and the causes of it, we do not enter, nor do we express an opinion thereon. The present situation, however, as observed physically on the ground, is at least very suggestive that such a community needs, and is entitled, to govern itself. The purpose of the petitioners is to secure an efficient local self-government suitable to the essential municipality which has grown up within the section."

This court decided, in Shillington Incorporation, 1 Berks Co. L. J. 297, that the incorporation of a borough ought not be controlled by the fact that it would seriously diminish the revenue of the township. We note, also, that the present application embraces but 374 acres, while the former, which we refused, would have removed 515 acres from the township.

The township's remaining objection (exception No. 1) is that the signers of the petition do not constitute a majority of the freeholders. In our opinion in the former proceeding, we said: "It is apparent, therefore, that a majority of the freeholders of the various sections, as well as of the total area of the proposed territory to be incorporated, have petitioned for its incorporation. Counsel do not contend otherwise. And as far as numerical requirements of signers are concerned, the number of petitioners and the proportion which this number bears to the total number of resident freeholders within the territory are sufficient to meet the statutory requirements."

In the present case, remonstrants offered no testimony and contend that our former finding does not adjudicate the present application, which is de novo, and must stand or fall on its own record. This contention is correct. Counsel also contends that it was not obligatory for remonstrant to offer testimony, but that applicant must make a record which shows that the signers constitute a majority of the freeholders. This contention is likewise correct. We cannot, however, agree with counsel that a majority do not appear to have signed. Derr testified that in the district in which he circulated the petition there were eighty-seven freeholders, of whom sixty-six signed; Moser, likewise, that out of 178 in his district he obtained the signatures of 154; Kerns testified to 102 out of 147; Scull, to 21 out of 32; Hurst, to 101 out of 134, and Speice, to 102 out of 117. Derr also testified that the total freeholders of the entire territory for which incorporation is sought number 704. It appears, therefore, that 546 of a total of 704 freeholders have signed the petition, or about 77½ per cent. The law requires a majority.

Counsel object to the above-cited testimony as based on inadequate knowledge in the witnesses, for the reason that there is no testimony that they consulted records. Their testimony, however, was not objected to, nor was any

motion made to strike it out, nor did remonstrant offer any testimony in rebuttal. The evidence is reasonable in itself, is prima facie believable, and is at least corroborated, if that were necessary, by the testimony as to the number of freeholders taken in the prior hearing. The law does not require that the witness should have consulted records. If he speaks from general knowledge or from information obtained in his visitations for the obtaining of signers, it is prima facie sufficient. Counsel cite In re Borough of Old Forge, 5 Lack. Leg. News 185, wherein the court said, at page 186: "In this conflict between parties apparently equally informed, recourse has been had to the assessment books of the township." But in that case the majority was so close as to be very doubtful, in view of the four divergent estimates by the four witnesses called. In the present case, no such situation exists, the evidence presents no contradictions or any element challenging the approximate accuracy of the estimates of the witnesses. The majority of signers is not narrow, but great, and a most powerful inference of validity and correctness arises from the failure of remonstrant to present any testimony. We, therefore, do not hesitate to find in fact that the majority has been affirmatively established.

At the argument, counsel for a number of residents of three half blocks abutting on the south side of Lancaster Avenue and lying between the county poor farm and Kenhorst Boulevard, represented to the court that these residents of the proposed borough had not remonstrated, but have appealed to the City of Reading for annexation to that municipality. It appears that such an annexation would straighten the city lines at that point. This would be logically desirable, although the inclusion of the three half blocks in the proposed borough presents no apparent difficulties. The matter of the present incorporation has been mooted in the section involved for considerably over a year. There have been several hearings and two separate proceedings. The whole section has been canvassed twice for signers, and the proceedings have been advertised and readvertised. Now to exclude the three half blocks in order to permit their annexation to the City of Reading would result under the law in the nullity of all that has been done, and would require the circulation of a new petition, readvertisement and a new hearing. While we should have been inclined to favor the annexation of the three half blocks to the city, no certain statement has been made, nor, we suppose, could at this time be made, as to the city's future action thereon, and we are of opinion that, in view of the length of time during which this incorporation has been litigated and has been a matter of common knowledge throughout the territory affected, including the said three half blocks, we ought not now withhold the charter.

In our former opinion we said: "It will have to cut its coat according to its cloth, and will assuredly not be able to do everything at once, or even soon. But possessing a population of 2000, embracing 1200 adults residing in 594 homes, and comprising real estate of an assessed valuation of $1,005,335, the people of the proposed borough should be able, by careful management, to improve to a marked degree their present municipal condition if granted home rule." These figures must be altered somewhat, although not materially, and not to the disadvantage of the proposed incorporation, by the fact that the present application excludes from the proposed borough about one-third of the area covered in the former application. Of that excluded portion, we said in our opinion: "Such portion constitutes about one-third of the proposed borough and is undeveloped and largely used as farm land. In our opinion, its inclusion at this time would be of no present or near benefit to its occupants, and might well prove instant financial detriment, not only to them, but

to the rest of the proposed borough as well as to the remainder of the township."

We find the statutory requirements to have been complied with by the applicants and approve the merits of their application.

And now, to wit, July 27, 1931, the application for the incorporation of the borough is granted. Counsel may prepare the proper decree.

From Charles K. Derr, Reading, Pa.